**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| POST HOLE VENTURES, LLC, LEE BRENT BATES, | § § § | |
| *Plaintiffs* | § § | SA-21-CV-00980-XR |
| -vs- | § § | |
| CITY OF KERRVILLE, TX, | § § | |
| *Defendant* | § § | |

## <u>ORDER ON MOTION TO DISMISS</u>

Before this Court is Defendant's Motion to Dismiss (ECF No. 27), challenging this Court's jurisdiction and Plaintiffs' ability to state a claim upon which relief can be granted, Plaintiffs' response (ECF No. 28), and Defendant's reply (ECF No. 29). After careful consideration, the Court issues the following order.

## BACKGROUND

Plaintiffs Post Hole Ventures, LLC ("PHV") and its sole member, L. Brent Bates, brought this action under 42 U.S.C. § 1983, challenging numerous citations and decisions issued by the City of Kerrville ("Kerrville" or the "City") in connection with PHV's construction of an office building as violations of their equal protection and due process rights under the Fourteenth Amendment. ECF No. 25 at 1.

PHV owns property within an office park development at the River Guide Village, located at 1001 Water Street in Kerrville, where it is constructing an office building (hereinafter, "the Property"). *Id*. at 3. Construction began in Fall 2018. *Id*. In September 2018, the City issued a building permit, Permit 0201800760 ("Permit 760") to PHV, as the owner, and Knowles Shaw & Company, LLC ("KSC"), as the general contractor, for the construction of the office building. PHV continued construction and received a plumbing permit on October 31, 2018. *Id.* Work on

the building proceeded until the end of 2019, and a significant percentage of the Property was completed. However, on December 12, 2019, the City advised that no Certificate of Occupancy would be issued until additional inspections were completed. *Id*. Nonetheless, construction continued, and PHV received an additional permit for electrical work on March 31, 2020. *Id*.

After March 2020, relations between Plaintiffs and the City began to deteriorate. Plaintiffs allege that, between April 2020 and December 2021, the City acted improperly by issuing a series of permitting decisions, stop work orders, and citations to prevent Plaintiffs from completing construction. *Id*. at 4–10. It is unclear from the Second Amended Complaint exactly which of the City's decisions Plaintiffs seek to challenge. At bottom, the Second Amended Complaint identifies and objects to three permitting decisions:

1. Permit 760, issued on September 28, 2018. ECF No. 25 at 4. The parties dispute whether Permit 760 was a "full building" permit, *id*., or a "shell-only" permit, and, accordingly, whether Plaintiffs exceeded the scope of the permit, as alleged in a series of citations issued by the City. ECF No. 27 at 2; ECF No. 25 at 3–6.

2. The decision to withhold a certificate of occupancy, communicated to Plaintiffs on December 12, 2019.[1] *Id*. at 3. Plaintiffs first appealed this decision on July 28, 2020. Plaintiffs allege that Defendant wrongly denied the appeal by characterizing it as a request for a variance. *Id*. at 5.

3. The denial of a "finish out" permit. It is unclear from the pleadings when this permitting decision was communicated to Plaintiffs and whether it is a final decision. The Motion to Dismiss provides that Plaintiffs "appealed" this decision twice: first, on June 11, 2021, and again on August 24, 2021. ECF No. 27 at 14. Both appeals were "due to outstanding

---

[1] Plaintiffs ultimately appealed this decision on three occasions: July 28, 2020 (ECF No. 25 at 5), August 5, 2020 (ECF No. 3 at 2), and April 6, 2021 (ECF No. 3-7).

comments that needed to be addressed on the plans submitted by Plaintiffs Bates and PHV before a final decision could be made." *Id*. Defendant maintains that no final decision has been made on the "finish out permit" and that this was communicated to Plaintiffs on July 27, 2021. *Id*. at 15.

Plaintiffs also object to the stop work orders and citations that were issued in relation to the above three decisions. These include (1) a "stop work order" issued on April 22, 2020, based on an alleged violation of Permit 760, *id*.; (2) a related citation issued for violating the stop work order, issued November 5, 2020, *id.*; (3) a citation issued to Bates personally for the unlawful continuation of work in violation of a stop work order, issued on December 7, 2020,[2] *id*., and; (4) a citation for electrical violations, issued to Bates personally on December 7, 2020. ECF No. 25 at 6.

Plaintiffs allege that Defendant took the following improper actions while issuing the above decisions:

- After issuing Permit 760, Defendant altered the permit in the City's formal computing system from a "full building" to a "shell only" permit, which is more limited in scope. *Id.* at 4. Plaintiffs state that Defendant subsequently issued stop work orders and citations to PHV for violating the scope of the "shell only" permit. *Id*.

- On April 22, 2020, the City issued a stop work order claiming that no interior floor plans had been submitted, but Plaintiffs claim that all interior floor plans were submitted prior to the issuance of the electrical permit on March 31, 2020. *Id*. at 4.

- On July 28, 2020, Plaintiffs appealed the City's December 12, 2019 decision regarding the occupancy permit. Plaintiffs allege that Defendant mischaracterized this appeal as a "variance" to impose additional requirements on Plaintiffs to secure the required permits. *Id*. at 5. Plaintiffs argue that, since then, Defendant has characterized Plaintiffs' July 28 filing both as an "appeal" or a "variance," to simultaneously argue that Plaintiffs have

---

[2] The Court presumes that the citations were issued in connection with the April 22, 2020 stop work order. With the exception of the two citations issued to Bates on December 7, 2020, the Second Amended Complaint largely fails to specify which permitting decisions and citations were issued to PHV versus Bates individually. ECF No. 25 at 6. Because Plaintiffs acknowledge that the December 7, 2020 citations were issued to Bates personally, the Court further presumes that all other permitting decisions and citations were issued to PHV.

either received their appeal (and were denied) or allege that their filing was an improper appeal or request for a variance so that no further review is warranted at the time. *Id*. at 5.

- Defendant failed to appropriately communicate the dates upon which Plaintiffs' permitting hearings would be held and the bases for their permitting decisions. *Id*.

- Defendant illegally altered and purged documents relevant to the permitting decisions. *Id*. at 7.

- Defendant categorizes projects associated with Plaintiff Bates differently than those of other construction companies, *id*. at 8, and takes more time to review and approve or deny Bates-related projects than other developers.

- Defendant improperly refused to provide documents that Plaintiffs requested under the Texas Public Information Act, TEX. GOV'T CODE § 552.321 *et seq.* ECF No. 25 at 9.

In Plaintiffs' view, the City's actions are retaliatory in nature, arising from a 2008 dispute over another one of their construction projects in the City: the Palacios de Guadalupe luxury condominium. *Id*. at 7–8. According to Plaintiffs, a building permit for this condominium should have been issued within five days of the application but was not issued until ninety days later upon vote by the City Council. The City Council, instead of the BBAA, made the permitting decision because, at the time, Bates was head of the BBAA and recusal of the Board was therefore necessary. An appeal on the permit decision for the condominium was heard on September 9, 2008, by the City Council. Plaintiffs allege that Bates exposed "such a level of abuse, incompetence, [and] numerous misinterpretations of building and fire codes," that it led three city employees—the City Manager, the Chief Building Inspector, and the Kerrville Fire Marshal—to resign. *Id*.

Plaintiffs allege that, since the Palacios del Guadalupe appeal, the City has employed a method and manner of identifying and highlighting the fact that Bates is involved in the development and/or construction under review and has subjected Bates-related projects to different treatment than projects by other developers. *Id.* For example, the City refers to the "Bates" projects, as opposed to naming the projects by their street name or the property type involved. *Id*. Plaintiffs

further assert that Kerrville takes more time to review Bates-related projects than other developments and offer an exhibit to support this finding. *Id*. at 16–17.[3] Thus, Plaintiffs argue they have been treated differently than other construction companies. *Id*. at 11.

Bates originally filed this action in federal court on behalf of PHV, seeking a writ of mandamus to compel Kerrville to hear the appeal that was denied in August 2021. ECF No. 1 at 27. He later amended the request for a writ of mandamus. ECF No. 3.[4] Bates is not a licensed attorney, however, and thus is not qualified to represent PHV in federal court. *Stark v. Kohrs*, No. 1:19-CV-041-LY, 2020 WL 734480, at *1 (W.D. Tex. Feb. 12, 2020) (citing *Sw. Express Co. v. Interstate Com. Comm'n*, 670 F.2d 53, 54–56 (5th Cir. 1982)) ("Although an individual has the right to proceed pro se, business entities such as limited liability companies—as fictional legal persons—have no such right, and must be represented by licensed counsel."). Accordingly, the Court issued an order directing PHV to secure counsel. ECF No. 4 at 1. PHV retained counsel, who subsequently filed a First Amended Complaint, which added KSC and Bates—the sole member of both PHV and KSC—as plaintiffs. *See* ECF No. 11.[5]

Thereafter, Plaintiffs' counsel filed a Second Amended Complaint, ECF No. the operative pleading, removing KSC as a party to the case and alleging claims under 42 U.S.C. § 1983 for violations of their Equal Protection, Substantive Due Process, and Procedural Due Process rights

---

[3] A court may consider documents incorporated into the complaint by reference when considering a motion to dismiss. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Courts may also consider any documents attached to the complaint and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint. *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010); *see also Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 546 (5th Cir. 2010) (quoting *Scanlan v. Tex. A & M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003) (holding that while the court generally must not go outside the pleadings, "the court may consider documents attached to a motion to dismiss that 'are referred to in the plaintiff's complaint and are central to the plaintiff's claim.'")). The district court may also take judicial notice of matters of public record. *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011); *see also Norris v. Hearst Tr.*, 500 F.3d 454, 461 n.9 (5th Cir. 2007) ("[I]t is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record.").

[4] This Court takes judicial notice of previous filings on the docket that are central to Plaintiff's Second Amended Complaint. *See Krystal One Acquisitions, LLC v. Bank of Am., N.A.*, 805 F. App'x 283, 287 (5th Cir. 2020)

[5] This amended complaint mooted Defendant's motion to dismiss the original complaint filed by Bates. ECF No. 9.

under the Fourteenth Amendment and for violations of as the Texas Public Information Act ("TPIA"), TEX. GOV'T CODE § 552.321(a). ECF No. 25 at 10–15. Plaintiffs seek (1) damages in the form of costs and expenses as a result of the delay in constructing their building; (2) a writ of mandamus requiring the City to hear its appeals; and (3) a writ of mandamus requiring the City to produce public information as required under the TPIA. *Id.* at 13.

Two weeks after the filing of the Second Amended Complaint, the citations issued to Bates were tried in Kerrville Municipal Court, and he was found guilty as to both citations. *See* ECF No. 28 at 10. Bates has appealed the convictions. *Id.*

Defendant now moves to dismiss the Second Amended Complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, arguing that Bates lacks standing and that Plaintiffs' claims are not ripe for review. ECF No. 27 at 3–5. Defendants also move for dismissal under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. *Id.*

## LEGAL STANDARDS

A federal court must consider a motion for lack of subject matter jurisdiction "before other challenges 'since the court must find jurisdiction before determining the validity of the claim.'" *Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169, 172 (5th Cir. 1994) (quoting *Gould, Inc. v. Pechiney Ugine Kuhlmann*, 853 F.2d 445, 450 (5th Cir. 1988)); *see also Tex. Democratic Party v. Hughs*, 474 F. Supp. 3d 849, 853 (W.D. Tex. 2020), *rev'd and remanded on other grounds*, 860 F. App'x 874 (5th Cir. 2021) ("When a Rule 12(b)(1) motion is filed in conjunction with other motions under Rule 12, the court should consider the Rule 12(b)(1) jurisdictional challenge before addressing other challenges") (citing *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001)). Accordingly, the Court will address the challenges to its subject matter jurisdiction before considering Defendant's motion to dismiss for failure to state a claim.

## I.       Rule 12(b)(1) – Subject Matter Jurisdiction

Dismissal is proper under Rule 12(b)(1) "when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). Article III of the United States Constitution limits a federal court's judicial power to "cases" and "controversies." U.S. CONST., Art. III, § 2. The various Article III doctrines—standing, mootness, ripeness, and political question—reflect "the idea of separation of powers on which the Federal Government is founded." *Allen v. Wright*, 468 U.S. 737, 750 (1984). "If a dispute is not a proper case or controversy, the courts have no business deciding it, or expounding the law in the course of doing so." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006). The case-or-controversy requirement is satisfied when a plaintiff has standing and the dispute is ripe. *Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 273 (2008); *see also Poe v. Ullman*, 367 U.S. 497, 503–04 (1961) ("The various doctrines of standing, ripeness, and mootness [are manifestations] of the primary conception that federal judicial power is to be exercised . . . only at the instance of one who is himself immediately harmed, or immediately threatened with harm, by the challenged action.").

Standing ensures that a "litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Allen*, 468 U.S. at 750–51 (citing *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). The constitutional requirements are well-established: a plaintiff must allege an injury in fact that was caused by the defendant and is capable of being redressed by the court. *Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992). "To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Spokeo, Inc. v. Robins,* 578 U.S. 330, 339 (2016). "At

the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice[.]" *Lujan*, 504 U.S. at 561.

The ripeness doctrine prevents the courts, "through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties," *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 807–08 (2003) (citing *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148–49 (1967)). Courts considering ripeness must evaluate the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration; generally, cases are not ripe if the facts need further development. *Choice Inc. of Tex. v. Greenstein*, 691 F.3d 710, 715 (5th Cir. 2012).

A district court may dismiss for lack of subject matter jurisdiction "on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Pickett v. Tex. Tech Univ. Health Scis. Ctr.*, 37 F.4th 1013, 1019 (5th Cir. 2022) (citing *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)). The party asserting federal jurisdiction has the burden of proving by a preponderance of the evidence that subject matter jurisdiction exists. *New Orleans & Gulf Coast Ry. Co. v. Barrois*, 533 F.3d 321, 327 (5th Cir. 2008). "Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction—its very power to hear the case—there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Williamson v. Tucker*, 645 F.2d 404, 412–13 (5th Cir. 1981). In short, no presumptive truthfulness attaches to a plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from

evaluating for itself the merits of jurisdictional claims. *Id.* at 413. Further, materials such as affidavits and regulations can be considered when relevant to the issue of jurisdiction. *Poindexter v. United States*, 777 F.2d 231 (5th Cir. 1985).

## II.    Rule 12(b)(6) – Failure to State a Claim

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for the dismissal of a complaint for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

In considering a motion to dismiss under Rule 12(b)(6), all factual allegations from the complaint should be taken as true, and the facts are to be construed in the light most favorable to the nonmoving party. *Fernandez-Montes v. Allied Pilots Assoc.*, 987 F.2d 278, 284 (5th Cir. 1993). Still, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "'[N]aked assertions' devoid of 'further factual enhancement,'" and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the presumption of truth. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557); *see also R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (stating that the Court should neither "strain to find inferences favorable to plaintiffs" nor accept "conclusory allegations, unwarranted deductions, or legal conclusions.").

**DISCUSSION**

**I.    Rule 12(b)(1) - Motion to Dismiss for Lack of Subject Matter Jurisdiction**

    **A.        Standing**

Defendant argues that Plaintiff Bates lacks standing to protest the City's permitting decisions because any permitting decisions affected PHV as a legal entity rather than Bates in his personal capacity. ECF No. 27 at 4–6. The Court agrees.

It appears that, aside from the two December 7, 2020 citations naming Bates personally, the City's permitting decisions were issued to PHV as the developer in question. Therefore, any injury, delay, or violation of constitutional rights that were suffered because of those decisions was borne by Plaintiff PHV, not Plaintiff Bates.

Further, Bates cannot assert an injury on behalf of PHV. The general rule is that members of limited liability corporations may not sue individually for harms suffered by the LLC. *See Gregory v. Mitchell*, 634 F.2d 199, 202 (5th Cir. 1981); *Searcy v. Houston Lighting & Power Co.*, 907 F.2d 562 (5th Cir. 1990); *Baisden v. I'm Ready Prods., Inc.,* 693 F.3d 491, 509 (5th Cir. 2012). This is true even where the individual is the entity's sole member. *L & F Homes & Dev., L.L.C. v. City of Gulfport, Miss.,* 538 F. App'x 395 (5th Cir. 2013) (citing *Bellows v. Amoco Oil Co.*, 118 F.3d 268, 277 (5th Cir. 1997)). Neither the Second Amended Complaint nor Plaintiffs' Response suggests why this general rule should not apply. *See generally* ECF Nos. 25, 28. Because Bates has not alleged an injury independent of PHV's injuries, he does not have standing to bring claims arising out of the City's decisions concerning PHV. These claims are dismissed.

However, to the extent that Bates objects to the December 7, 2020 criminal citations, which were issued in his name, the City is correct that such a claim is barred by *Heck v. Humphrey*, 512

U.S. 477, 486 (1994), because Bates acknowledges that he was convicted on both citations on

April 18, 2022. ECF No. 28 at 10. Under *Heck*:

> [I]n order to recover damages for allegedly unconstitutional conviction[s] .
> . . a § 1983 plaintiff must prove that the conviction or sentence has been reversed
> on direct appeal, expunged by executive order, declared invalid by a state tribunal
> authorized to make such determination, or called into question by a federal court's
> issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing
> that relationship to a conviction or sentence that has *not* been so invalidated is not
> cognizable under § 1983.

*Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994). A judgment that these citations were issued in

violation of Bates's constitutional rights would imply the invalidity of his conviction. *See Legate*

*v. Garcia*, 582 F. App'x 287, 288 (5th Cir. 2014) ("[A]ny claim that Legate was wrongly convicted

based on due[-]process violations at trial would necessarily imply that his conviction is invalid")

(citations omitted). Because Bates has not shown that his convictions have been reversed or set

aside in any of the manners listed in *Heck*, Bates' claims related to the criminal convictions are

stayed until the resolution of his appeal. *Wallace v. Kato*, 549 U.S. 384 (2007).

### B.    Ripeness

Defendant argues that reviewing the City's permitting decisions is improper because

several decisions are not final. *See* ECF No. 27 at 4–5. Indeed, the City asserts that several of the

contested actions themselves, including its request for additional information, "clearly indicate

that they are not final as the City is awaiting additional plans for review." *Id.*

"Where issues of fact are central both to subject matter jurisdiction and the claim on the

merits . . . the trial court must assume jurisdiction and proceed to the merits." *Pickett*, 37 F.4th at

1019; *Montez v. Dep't of the Navy*, 392 F.3d 147, 150 (5th Cir. 2004). Defendant's ripeness

argument goes directly to the merits of the PHV's Procedural Due Process claim. For this Court to

determine whether Plaintiff's claims are ripe, it would need to resolve factual disputes regarding

the City's appellate procedure and how it was applied to PHV; these findings would necessarily resolve the Due Process claim as well. Because Defendant's ripeness arguments are intertwined with PHV's Due Process arguments, this Court proceeds assuming subject matter jurisdiction over this issue.

## II.    Rule 12(b)(6) - Motion to Dismiss for Failure to State a Claim

### A.    The Texas Public Information Act

PHV seeks a writ of mandamus compelling Defendant to, among other things, produce the documents that PHV requested under the Texas Public Information Act ("TPIA"), TEX. GOV'T CODE § 552.321(a). ECF No. 25 at 12–13. For the reasons stated below, the federal district court is an improper forum for this request.

The TPIA contains a private enforcement provision for requestors to protest withheld information. *See* TEX. GOV'T CODE § 552.321(a). "A requestor . . .  may file suit for a writ of mandamus compelling a governmental body to make information available for public inspection if the governmental body . . . refuses to supply public information." *Id.* However, the TPIA provides that a civil enforcement suit must be "filed in a *district court for the county in which the main offices of the governmental body are located*." *Id.* § 552.321(b) (emphasis added). The majority of federal district courts within Texas have interpreted § 552.321(b) to require plaintiffs to file their claims in state court originally. *See, e.g.*, *Conlin v. Davis*, No. CIVA H-06-3305, 2006 WL 3030717, at *1 (S.D. Tex. Oct. 23, 2006) ("This Court is without jurisdiction to issue a mandamus against Texas state officials ordering them to provide plaintiff with his requested information."); *Jackson v. Tex. S. Univ.,* No. CIV.A. H-11-4092, 2013 WL 593412, at *7 (S.D. Tex. Feb. 14, 2013) ("[F]ederal district courts are courts of limited statutory jurisdiction . . . [and lack] jurisdiction to issue a mandamus against Texas state officials to order them to provide

Plaintiff with her requested information."); *Gonzalez v. Northside Indep. Sch. Dist.*, No. SA-20-CV-00926-XR, 2020 WL 5640459, at *6 (W.D. Tex. Sept. 22, 2020), *report and recommendation adopted in* 5:20-cv-00926-XR, ECF No. 12 ("The [TPIA] . . . provides comprehensive post-deprivation remedies to redress the failure of a governmental body to make information available for public inspection, including the option of seeking a writ of mandamus or filing an action for a declaratory judgment or injunctive relief in the *appropriate state court*.") (emphasis added).[6]

In line with our sister courts, this Court interprets § 552.321(b) to require plaintiffs to file suit in the appropriate state court in the first instance. Because PHV did not do so, its TPIA claim is not properly before this Court and must be dismissed.

### B.      Constitutional Claims

PHV's remaining claims are asserted under 42 U.S.C. § 1983 for violations of its rights under the Fourteenth Amendment rights, which provides that no state shall "deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

#### 1.      Municipal Liability Under *Monell*

Section 1983 authorizes suits against "every person who, under color of any statute, ordinance, regulation, custom, or usage . . . subjects, or causes to be subjected, any citizen of the United States . . . the deprivation of any rights, privileges, or immunities secured by the Constitution and laws,"42 U.S.C. § 1983; *see also West v. Atkins*, 487 U.S. 42, 48 (1988). While it is well established that cities and municipalities are "person[s]" under § 1983, the Supreme Court made clear long ago that a local governmental entity can only be held liable for constitutional

---

[6] These holdings are consistent with the Fifth Circuit case *Garcia v. City of McAllen, Tex.*, 853 F. App'x 918 (5th Cir. 2021) (affirming a district court's jurisdiction over a Texas Public Information Act Claim that was originally filed in state court but removed to federal court).

harms that are directly attributable to the governmental entity itself. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978) ("Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort."). Accordingly, a plaintiff suing a municipality under § 1983 must show that "the municipality has a policy or custom that caused plaintiff's injury." *Crull v. City of New Braunfels, Tex.*, 267 F. App'x 338, 342 (5th Cir. 2008) (citing *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984)). "The plaintiff must identify the specific policy or custom, and show that the final policy maker, through its 'deliberate conduct,' was the 'moving force' behind the violation." *Id.* at 342 (citing *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 403 (1997)). The "moving force" requirement requires plaintiffs to show "that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Brown*, 520 U.S. 397 (1997); *Alvarez v. City of Brownsville*, 904 F.3d 382, 390 (5th Cir. 2018) (requiring plaintiff to show that "the policy was implemented with deliberate indifference to the known or obvious consequences that constitutional violations would result.").

Plaintiffs' Second Amended Complaint clearly identifies the City of Kerrville as the policymaker responsible for propagating the ordinances that govern appeals of permitting decisions to the Building Board of Adjustment and Appeals ("BBAA") and City Council. ECF No. 25 at 3. PHV also argues that the City had "actual or constructive knowledge" of the BBAA and City Council's actions towards PHV, alleging "ex parte communications between and among City staff and Kerrville City Council members" regarding PHV's project. *Id.* at 7. *See Piotrowski v. City of Houston,* 237 F.3d 567, 579 (5th Cir. 2001) ("Actual or constructive knowledge of [a]

custom must be attributable to the governing body of the municipality or to an official to whom that body has delegated policy-making authority.").

PHV plausibly alleges that the City adopted a custom of treating PHV differently than other developers. Custom can be shown by "a persistent, widespread practice of City officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents municipal policy." *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001) (citing *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984)). PHV alleges that since 2008, the City has referred to the Property as the "Bates Building," and thereby "singles out Bates-related projects from other similar developments." ECF No. 25 at 7. PHV asserts that from May 2020 to August 2021, the City has delayed judgments on its projects. In support of this allegation, PHV offers a chart depicting the average City response times to non-Bates construction plan requests versus the amount of time taken for PHV projects. *Id.* at 16–17. Finally, PHV states that the City ignored the advice of its retained consultants that the Property should be approved for completion. *Id.* at 9. Taken as true, these claims state at least a plausible case that the City has an established custom to handle PHV's projects differently than others.

While PHV has adequately alleged that challenged conduct is directly attributable to the City, PHV must also establish that it suffered a constitutional harm. Accordingly, the Court will address Plaintiff's allegations that the City violated its rights under the Fourteenth Amendment.

### 2.     Equal Protection

"The equal protection clause essentially requires that all persons similarly situated be treated alike." *Glass v. Paxton*, 900 F.3d 233, 244 (5th Cir. 2018). "If a law neither burdens a fundamental right nor targets a suspect class, [courts] will uphold the legislative classification so

long as it bears a rational relation to some legitimate end." *Romer v. Evans,* 517 U.S. 620, 631 (1996).

PHV fails to identify a fundamental right that was violated. *San Antonio Indep. Sch. Dist. v. Rodriguez,* 411 U.S. 1, 17 (1973) (a fundamental right is a right "explicitly or implicitly guaranteed by the Constitution."). Nor does it claim to be a member of a protected class. Instead, PHV argues that it has been "subjected to governmental actions of Kerrville that are different from the City's treatment of others under same or similar circumstances," ECF No. 25 at 11, thereby asserting a "class-of-one theory."[7] *Jingping Xu v. Univ. of Tex. MD Anderson Cancer Ctr.,* 854 F. Supp. 2d 430, 442 (S.D. Tex. 2012), *aff'd,* 595 F. App'x 341 (5th Cir. 2014); *see also Vill. of Willowbrook v. Olech,* 528 U.S. 562 (2000) (permitting equal protection claims as a "class of one"). To succeed at this stage, PHV must plausibly allege that it was treated differently from others similarly situated and there was no rational basis for the disparate treatment.

Defendant correctly observes that PHV fails to identify "any developer, other projects, or any other example of what standards applied to each of them, or which standards were applied to each of them in a different matter." ECF No. 27 at 10. Because Plaintiff fails on the first element, the Court proceeds no further. By failing to identify others who were "similarly situated" to PHV, Plaintiff's Second Amended Complaint cannot plausibly allege that it was treated differently and, thus, fails to state a claim for an Equal Protection violation.

---

[7] Because PHV fails on the other elements of its Equal Protection claim, this Court assumes, but does not decide, that a class-of-one theory applies in this context. Both the Supreme Court and the Fifth Circuit have found that a "class of one" theory is inapplicable in some contexts, particularly where the government decision requires discretionary, subjective, and individualized assessments. *See Engquist v. Or. Dep't of Agr.,* 553 U.S. 591, 605 (2008) ("The class-of-one theory of equal protection . . . is simply a poor fit in the public employment context."); *Integrity Collision Ctr. v. City of Fulshear,* 837 F.3d 581, 586 (5th Cir. 2016) (stating that the class-of-one theory fails in the context of a "government's discretionary decision to include or not include a company on a non-consent tow list.").

### 3.      Substantive Due Process

Substantive due process prevents the government from engaging in conduct that "shocks the conscience or interferes with rights implicit in the concept of ordered liberty." *United States v. Salerno*, 481 U.S. 739, 746 (1987); *Patterson v. Def. POW/MIA Acct. Agency*, 343 F. Supp. 3d 637, 647 (W.D. Tex. 2018) (describing violations as "shocking or violative of universal standards of decency," "arbitrary or capricious," or counter to "the concept of ordered liberty.") (internal citations omitted).

To prevail on a substantive due process claim, a plaintiff must first demonstrate that they hold a constitutionally protected property right to which Due Process protections apply. *Patterson v. Def. POW/MIA Acct. Agency*, 343 F. Supp. 3d 637, 646 (W.D. Tex. 2018) (citing *Simi Inv. Co. v. Harris Cnty., Tex.*, 236 F.3d 240, 249 (5th Cir. 2000)). Second, they must demonstrate that the government action is not "rationally related to a legitimate governmental interest." *Bush v. City of Gulfport, Miss.*, 454 F. App'x 270, 275–76 (5th Cir. 2011).

PHV has an identifiable interest in the completion of the Property based on the plausible allegation that Permit 760 was a "full building" permit. Further, the fact that the Property was almost complete when the first stop work order was entered, this Court finds that any interest in its completion extends beyond the original permit and to the subsequent permits needed for the final construction, i.e., the occupancy and finish out permits.

Further, PHV states that Permit 760 was modified without cause. PHV supplied a version of Permit 760, ECF No. 3-1, and this Court notices no comments or limiting language that indicates it is a "shell only" permit. Moreover, at the April 14, 2022 status conference, the City admitted it had not reviewed PHV's supplied permit, raising at least the plausible claim that there are differences between PHV's permit and the version in the City's possession. *See* Transcript of

Status Conf. at 25, *Post Hole Ventures, LLC et al v. City of Kerrville, TX*, (April 14, 2022). Were that to be true and taking the facts in the light most favorable to PHV, this Court can imagine no rational reason why the City would retroactively modify an already-issued permit.

PHV has also established a Substantive Due Process claim regarding the occupancy permit. PHV's filings indicate that the occupancy permit was denied because of the City's interpretation of City Code § 1004. Section 1004 permits the calculation of occupancy loads using several formulas; buildings with more occupants require additional safety measures. The Fire Marshall and Building Official utilized a maximum capacity formula and calculated the occupancy load between 201 and 212. ECF 3-3 at 41; *id*. at 60, Plaintiff appealed the order, arguing that the occupancy load was much lower. *Id*. (showing requested load at "58+ persons, and not 201 maximum possible occupancy."); *id*. at 60 (providing an updated metric of 87 as the load). Plaintiff cited the stated exception in § 1004.1.1 as supporting authority. Section 1004.1.1 authorizes occupancy load calculations based on "the actual number of occupants for whom each occupied space, floor or building is designed*.*"

At the City Council hearing, Plaintiff claims that its appeal was characterized as a "variance" which has different standards of review than an appeal. ECF No. 3-4 at 42. Plaintiff did not request a variance. ECF No. 3-3. Although the City recognizes the September 8, 2020 hearing as one "on the appeal," this does not explain why the government handed out a pamphlet on PHV's "variance" request. Absent an explanation, this Court can think of no rational reason why the City would recategorize Plaintiff's appeal as a variance. Therefore, Plaintiff has alleged adequate facts to proceed on this claim as well.

Finally, PHV presented plausible arguments that the refusal to supply a "finish out" permit presents a constitutional violation. The parties agree that PHV has not been given a finish out

permit. The City claims this is because PHV has not provided the necessary documentation. ECF No. 27 at 14. PHV responds that it has provided the requisite documentation, some of which-like the interior floor plans- even before the March 2020 electrical permit was issued. ECF No. 25 at 4, 6. PHV catalogues a back-and-forth between the City wherein PHV is asked for more documentation only to be denied the permit and told additional paperwork is needed. *See* ECF No. 25 at 6; ECF No. 3-9. Finally, PHV has requested public information from the City related to the Property, which the City has refused. *Compare* ECF No. 3 at 73 (City claiming to have provided requested documents) *with* ECF No. 3 at 16 (documenting denials due to Attorney Client Privilege and terrorism-related concerns). The Complaint details a repeated refusal by the City to supply PHV with necessary documents to proceed; as such, discovery is necessary to uncover additional facts. PHV may proceed on this claim.

### 4.      Procedural Due Process

Procedural due process claims require that a plaintiff have been denied life, liberty, or property protected by the Fourteenth Amendment without due process of the law. *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) ("The deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law.*"); *Wilson v. Birnberg*, 667 F.3d 591, 597 (5th Cir. 2012).

As described above, PHV has protected property interests in the completion of its building, and this extends to Permit 760, the occupancy permit, and the finish out permits.  Permits and licenses qualify as property interests for purposes of procedural due process, *Bowlby v. City of Aberdeen, Miss.,* 681 F.3d 215, 220 (5th Cir. 2012), and once the City allowed PHV to begin building, it had an interest in completing the project. *Bowlby*, 681 F.3d at 220 (explaining that

licenses and permits are protected property rights because "*once issued*, a license or permit "may become essential in the pursuit of a livelihood.") (emphasis added).

Taking the following allegations in the light most favorable to the nonmoving party, PHV further alleges that Permit 760 modification was done without "disclos[ing] the date(s) applicable Kerrville officials and/or staff communicated about its consideration, its decisions and action taking on the permitting and inspections of the Building," ECF No. 25 at 5, without "identify[ing] the section and subsection of the standardized building code . . . pursuant to which Kerrville has made its decisions." *Id*. The City allegedly also toggled back and forth between whether the City's decisions were final or not. *Id*. PHV further alleges that the occupancy permit was denied, in part, because the appeal was recast as a request for a variance. An opportunity to be heard is inadequate if those hearing your claim misstate its essence.[8] Finally, it is undisputed that no hearing has been held regarding the finish out permit, despite PHV's repeated attempts to provide necessary documentation. Taken as true, PHV has alleged a plausible case that it has been deprived of its property without due process.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss (ECF No. 27) is **GRANTED IN PART** and **DENIED IN PART**. All claims made by Plaintiff Bates are **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction. Plaintiff PHV's causes of action under the Texas Public Information Act and Fourteenth Amendment Equal Protection clause are **DISMISSED**. PHV's Substantive Due Process and Procedural Due Process claims may proceed.

---

[8] Defendant maintains that the occupancy permit appeal was heard and denied on September 8, 2020. ECF No. 27 at 14. Defendant further submits that Plaintiffs filed another appeal on the same issue on April 6, 2021, and object that "nothing in the City's code or state law allows an appeal of a decision of the BBAA or City Council back to itself." ECF No. 27 at 14. This argument goes to the merits of Plaintiff's claim and is inappropriate to review at this time.

It is so **ORDERED**.

**SIGNED** this 19th day of October, 2022.

_____

XAVIER RODRIGUEZ

UNITED STATES DISTRICT JUDGE